UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE I. GONZALEZ,
    *Plaintiff*,

v.

FENTON, *et al.*,
    *Defendants*.

No. 3:17-cv-00309 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Jose I. Gonzalez is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging claims for deliberate indifference to safety and denial of due process. After an initial review pursuant to 28 U.S.C. § 1915A, the Court concludes that plaintiff's complaint should proceed and be served on two of the four defendants.

### BACKGROUND

The following allegations from plaintiff's complaint are accepted as true for purposes of this ruling. In 2016, plaintiff was incarcerated at MacDougall-Walker Correctional Institution. Plaintiff's cellmate had a reputation as a "celly killer" because he was alleged to have killed someone in California. Doc. #1 at 2 (¶ 10). On March 27, 2016, plaintiff sent an Inmate Request Form to defendant Unit Manager Davis, informing Davis that he was not getting along with his cellmate and requesting that his cellmate be moved. *Id.* at 1 (¶ 7); Doc. #1-1. On April 5, 2016, the plaintiff sent a nearly identical request to defendant Unit Manager Blanchard. *See* Docs. #1 at 2 (¶ 8); #1-2.

On April 8, 2016, defendant Correctional Officer Fenton responded to "verbal

aggression" coming from plaintiff's cell. Doc. #1 at 2 (¶ 11). He observed that plaintiff was injured and his cellmate was holding a weapon. After five minutes, defendant Fenton called for assistance. *Ibid*. Plaintiff's cellmate later admitted to assaulting plaintiff and was placed in the restrictive housing unit. Medical staff treated plaintiff for his injuries, which included scratches on the side of his face and the top of his head. Doc. #1-4 at 11.

On June 26, 2016, plaintiff wrote to defendant Warden Chaplain stating that he had seen his former cellmate loitering in the hallway of the correctional facility on April 29, 2016. Doc. #1-5. He questioned why the former cellmate had not been transferred to another facility. *Ibid*.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Plaintiff contends that all four defendants were deliberately indifferent to his safety. Specifically, he alleges that defendants Davis and Blanchard were aware of the problems between plaintiff and his cellmate but took no action to prevent the assault, that defendant Fenton

2

waited for at least five minutes before summoning help, and that defendant Chaplain failed to keep plaintiff and his cellmate separated following the assault. Plaintiff also argues that he was denied due process because he cannot read or write in English and because administrative remedy procedures were not provided to him in Spanish.

### *Deliberate indifference to safety*

Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, a plaintiff must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Where the claim is that defendants failed to protect plaintiff from harm at the hands of another inmate, the plaintiff must show that defendants knew of and disregarded an excessive risk to plaintiff's safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 358 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

Courts have found that prison officials are on notice of a substantial risk of serious harm where, for example, "there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated." *Roman v. Semple*, 2013 WL 951728, at *1 (D. Conn. 2013). Courts have also found that correctional staff are on notice "when an inmate informs corrections officers about a specific fear of assault and is then assaulted." *Beckles v. Bennett*, 2008 WL 821827, at *17 (S.D.N.Y. 2008). On the other hand, "communicating vague concerns of future assault by unknown individuals [is] not sufficient to impose liability on an officer who fails to protect an inmate." *Rivera v. New York*, 1999 WL 13240, at *9 (S.D.N.Y. 1999).

Plaintiff alleges that he informed defendants Davis and Blanchard that he was having problems with his cellmate, just days before the assault, and defendants allegedly failed to respond. Specifically, plaintiff wrote to Davis and Blanchard, "Me and my celly aren't getting along I don't want any trouble I'm trying to go home could you please move him before it becomes a problem." Docs. #1-1, #1-2. Although this communication, taken on its own, is somewhat vague and does not explicitly indicate a fear of assault, the complaint also alleges that plaintiff's cellmate "was know[n] as a 'celly killer' because he killed someone, allegedly, in California." Doc. #1 at 2 (¶ 10). If Davis and Blanchard were aware of the cellmate's reputation, plaintiff's communications combined with defendants' background knowledge may have been enough to put defendants on notice that plaintiff was at risk. I conclude that the allegations in the complaint are sufficient to enable plaintiff to conduct discovery to obtain evidence (if any) to support his claim. The claim for deliberate indifference to safety will therefore proceed against defendants Davis and Blanchard.

Plaintiff alleges that defendant Fenton responded to the sounds of an altercation but waited five minutes before summoning assistance. Plaintiff was not injured during this time. Plaintiff attached to his complaint a copy of the incident report which states that, upon arriving at the cell, defendant Fenton ordered the inmates to remain apart and then contacted his supervisor for assistance. Doc. #1-4 at 1, 5. Based on the facts alleged, the Court concludes that defendant has not alleged a plausible claim of Fenton's deliberate indifference to plaintiff's safety. The claim against defendant Fenton is therefore dismissed.

Plaintiff also alleges that defendant Chaplain was deliberately indifferent to his safety because she did not ensure that plaintiff's cellmate was transferred to another correctional facility immediately upon his release from segregation. Although plaintiff observed his former

4

cellmate on April 29, 2016, plaintiff did not notify defendant Chaplain of this fact until June 26, 2016, nearly two months later. The interview with plaintiff's former cellmate, completed as part of the incident report, indicates that the cellmate assaulted plaintiff because of issues they experienced while sharing a cell. Doc. #1-4 at 3. There is no indication in the record that the cellmate harbored animosity toward plaintiff after they were housed in separate cells. Rather, correctional staff concluded that the assault "appeared to be an isolated incident." Doc. #1-4 at 4. Absent any indication of continued animosity, defendant Chaplain's conduct consists, at most, of negligence, which is not cognizable as a violation of plaintiff's constitutional rights. *See Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986) (due process rights not violated by prison official's negligent failure to prevent attack of inmate by another inmate); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (noting that "negligence is insufficient to support an Eighth Amendment claim").

### *Due Process*

Finally, plaintiff asserts a claim for denial of due process because he was not provided administrative remedy procedures in Spanish. Although plaintiff alleges that he was not provided materials in Spanish, he does not identify any defendant who should have provided him with those materials. Even if plaintiff had identified a proper defendant, however, his claim would fail, because prison inmates do not have a constitutional right to effective institutional grievance procedures. *See Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012).

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) All claims against defendants Fenton and Chaplain and the due process claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

(2)     **The Clerk shall** verify the current work addresses for each defendant, Davis and Blanchard, with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     **The Clerk shall** send written notice to plaintiff of the status of this action, along with a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or counsel for defendants of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

It is so ordered.

Dated at New Haven, Connecticut this 11th day of April, 2017.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge